UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DONALD E.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C19-5367-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in discounting his subjective testimony, assessing the medical evidence, and discounting the lay evidence.[1] (Dkt. # 9 at 2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1957, has a college degree, and has worked as an electronic

---

[1] Plaintiff also asserts that these errors led to errors in the ALJ's assessment of his residual functional capacity ("RFC") and step-four findings, but these assignments of error are derivative and need not be addressed separately. (Dkt. # 9 at 2, 17-18.)

ORDER - 1

technician, design engineer, software tester, fast-food cashier, and window washer. AR at 45-49. At the time of the most recent administrative hearing, Plaintiff was working as an in-home caregiver, but the ALJ found that this work did not meet the threshold of substantial gainful employment. *Id.* at 742-43.

In October 2012, Plaintiff applied for benefits, alleging disability as of October 1, 2009. AR at 290-306. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 215-18, 224-30, 233-38. After the ALJ conducted a hearing on October 22, 2014 (*id*. at 77-109), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 13-27.

The Appeals Council denied Plaintiff's request for review (AR at 1-6), and Plaintiff requested judicial review. The U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded the case for further administrative proceedings. *Id*. at 907-12. Given that Plaintiff had been found disabled as of December 25, 2014, based on a subsequent benefits application, the Appeals Council instructed the ALJ on remand to consider whether Plaintiff was disabled in the period before December 25, 2014, unless the ALJ found reason to reopen the award of benefits. *Id*. at 925-26.

A different ALJ held an administrative hearing on November 16, 2017, and he ordered further development of the record, specifically related to Plaintiff's vocational history. AR at 767-814. That ALJ subsequently left the agency, and the case was transferred to a different ALJ, who held another hearing on October 2, 2018. *Id*. at 815-71.

Utilizing the five-step disability evaluation process,[2] the ALJ issued a decision finding:

> Step one: Plaintiff did not engage in substantial gainful activity during the adjudicated period (October 9, 2009, through December 24, 2014).

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

ORDER - 2

Step two: During the adjudicated period, Plaintiff's hepatitis C, status post interferon treatment, with fatigue, insomnia, and muscle fasciculations; hypothyroidism; mild peripheral neuropathy; and asthma were severe impairments.

Step three: These impairments did not meet or equal the requirements of a listed impairment during the adjudicated period.[3]

Residual Functional Capacity: During the adjudicated period, Plaintiff could perform light work with additional limitations: he could lift/carry 25 pounds occasionally and 25 pounds frequently in an eight-hour workday. He could stand and/or walk for four hours and sit for eight hours in an eight-hour workday. He had to avoid concentrated exposure to extreme cold and pulmonary irritants.

Step four: Plaintiff can perform past relevant work as a software engineer, electronics technician, and electronics assembler, and is therefore not disabled.

AR at 739-55. Plaintiff appealed this final decision of the Commissioner to this Court. (Dkt. # 1.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

---

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Harmfully Err in Discounting Plaintiff's Subjective Testimony

The ALJ discounted Plaintiff's testimony because (1) the objective medical evidence showed that many of Plaintiff's complaints had no objective basis, and that his pain, asthma, hypothyroidism, and insomnia were stabilized with medication; (2) his activities indicated that he was more functional than he alleged; and (3) his treatment history and reports to providers were inconsistent with his allegations during the administrative hearings. AR at 745-51. Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

First, Plaintiff argues that none of the objective evidence cited by the ALJ "actually contradicts any of [Plaintiff's] testimony about his symptoms and limitations, including the limitations related to fatigue and insomnia." (Dkt. # 9 at 14.) This is untrue. The ALJ cited many objective tests that failed to corroborate Plaintiff's alleged symptoms. AR at 746-50 (referencing Plaintiff's liver concerns, respiratory concerns, thyroid concerns, autoimmune concerns, swallowing concerns, voice concerns, vision concerns, nerve conduction studies). The ALJ cited substantial evidence supporting his interpretation of the objective medical record.

Next, Plaintiff argues that the ALJ failed to provide examples of activities or inconsistent statements that undermine his allegations. (Dkt. # 9 at 14-16.) Plaintiff correctly notes that the ALJ misstated the amount of work Plaintiff was performing as an in-home caregiver: the ALJ

erroneously stated that Plaintiff worked 35 hours/week in one part of the decision, but elsewhere had acknowledged that the record showed that he worked 35 hours/*month*. *Compare* AR at 751 *with id*. at 313, 316, 336, 374, 604, 724, 742. Regardless of the number of hours Plaintiff was paid to work as an in-home caregiver for his friend, the ALJ cited evidence showing that Plaintiff was responsible for cooking, shopping, household chores, bathing assistance, and taking her to medical appointments, while also managing his own activities of daily living independently. *Id*. at 751 (citing *id*. at 405, 604, 649-50, 733). The ALJ also cited evidence that Plaintiff could ride his bicycle for 30 minutes at a time, 3-4 times per week. *Id*. at 751 (referencing *id*. at 99-100). These activities are reasonably inconsistent with Plaintiff's hearing testimony that he was essentially bedridden for much of 2012 and 2013. *See id*. at 829-30. Accordingly, the ALJ did not err in relying on these activities as a basis for discounting Plaintiff's subjective allegations.

The ALJ also noted that Plaintiff did not report fatigue to his providers to the same degree that he described the fatigue at the hearings, and that his treatment notes also failed to corroborate his allegations of problems with memory, concentration, sleeping, and staying alert. AR at 751. Plaintiff contends that the evidence of only intermittent fatigue complaints does not contradict his allegations because he testified to variable levels of insomnia and yet emphasized that he "[n]ever, ever felt well-rested ever." (Dkt. # 9 at 15 (citing AR at 835).) Even if Plaintiff is correct that the citations provided by the ALJ do not contradict his allegations of insomnia and fatigue to variable degrees, the ALJ also cited notes that contradict Plaintiff's allegations of memory, concentration, and alertness deficits, and Plaintiff has provided no challenge to that line of reasoning. Thus, Plaintiff has not shown harmful error in the ALJ's finding that the treatment notes contradict Plaintiff's allegations. Because the ALJ provided clear and convincing reasons to discount Plaintiff's allegations, the Court affirms this portion of the ALJ's decision.

**B.      The ALJ Did Not Harmfully Err in Assessing the Medical Evidence**

Plaintiff assigns error to various parts of the ALJ's assessment of the medical evidence, and the Court will address each dispute in turn.

*1.      The ALJ Did Not Err at Step Two*

Plaintiff argues that the ALJ erred in finding that he had no medically determinable mental impairments at step two. (Dkt. # 9 at 3.) Plaintiff's opening brief contends that the ALJ's step-two finding is not supported by substantial evidence, but does not cite any evidence to support that argument. (*Id.*) Although Plaintiff suggests that the ALJ erred in failing to fully account for all of Plaintiff's impairments, "including his depression and personality disorder" (*id.*), he does not identify any specific error in the ALJ's discussion of the lack of clinical findings in the record to support the existence of any mental impairment. *See* AR at 743.

The ALJ also went on to explain that even if Plaintiff could be found to have a medically determinable mental impairment, the lack of mental health treatment during the adjudicated period undermined any argument that the mental impairments caused a significant limitation. AR at 743-44. Plaintiff does not address this finding or show why it is erroneous. Because Plaintiff has failed to meet his burden to show error in the ALJ's step-two findings, the Court rejects this assignment of error.

*2.      Katya Shkurkin, Ph.D.*

Dr. Shkurkin performed a mental health intake examination of Plaintiff in October 2014, and provided an opinion about his strengths and deficits in an employment setting. AR at 733-35. The ALJ summarized Dr. Shkurkin's opinion and found her conclusions to be "grossly inconsistent with the overall medical evidence of record," as they appear to be based on Plaintiff's subjective reports and inconsistent with his reports to treating providers, as well as

inconsistent with his "complete lack of mental health treatment" and his activities of daily living and caregiving. *Id*. at 753-54.

Plaintiff argues that the ALJ's reasons for discounting Dr. Shkurkin's opinion are not specific and legitimate, as required in the Ninth Circuit. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). First, Plaintiff argues that there is no evidence that Dr. Shkurkin based her opinion primarily on Plaintiff's self-report. (Dkt. # 9 at 6.) But Dr. Shkurkin did not have access to any of Plaintiff's other records, and referenced only Plaintiff's self-reported history and his symptom inventories in her opinion. AR at 733-34. The ALJ thus reasonably inferred that Dr. Shkurkin's opinion relied on Plaintiff's self-report.

Plaintiff also argues that although the ALJ found Dr. Shkurkin's opinion to be inconsistent with his lack of mental health treatment, the reason why he failed to obtain treatment and/or denied having any mental health symptoms is because he feared being diagnosed with schizophrenia like his family members had been. (Dkt. # 9 at 6.) As support for that proposition, Plaintiff points to evidence of his family members' schizophrenia diagnoses, but that evidence does not support an inference that he denied symptoms during the adjudicated period in order to avoid a similar diagnosis. *See* AR at 733, 1633. Thus, it appears that Plaintiff's explanation for his lack of mental health treatment and explicit denial of mental symptoms appears only in his briefing, and counsel's speculation lacks the support of substantial evidence in the record. The ALJ "fail[ed] to apprehend" (dkt. # 9 at 6) counsel's theory because it was not presented to him, and Plaintiff has not shown that the ALJ unreasonably interpreted the evidence in the record.

Plaintiff also argues that the ALJ erred in failing to acknowledge that he recently began receiving mental health treatment. (Dkt. # 9 at 6.) It is unclear how mental health treatment outside the adjudicated period would undermine the ALJ's assessment of the record pertaining to

the adjudicated period, and thus the Court does not find that this argument identifies an error in the ALJ's reasoning.

Plaintiff also contends that the ALJ erred in finding that his daily activities and caregiving responsibilities contradicted Dr. Shkurkin's opinion, because, as described *supra*, the ALJ misstated the number of caregiving hours Plaintiff was paid for. (Dkt. # 9 at 6-7.) Even assuming this error invalidates this line of reasoning, the ALJ provided other valid reasons to discount Dr. Shkurkin's opinion and thus the error is harmless. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

       3.     *Stamatis Zeris, M.D.*

Dr. Zeris performed a consultative psychiatric examination of Plaintiff in August 2013. AR at 649-52. Dr. Zeris wrote a narrative opinion describing Plaintiff's symptoms, and indicated that he found no basis for any psychiatric diagnosis and therefore concluded that Plaintiff had no mental limitations. *Id*.

The ALJ gave great weight to Dr. Zeris's opinion, finding it consistent with the record, Plaintiff's lack of treatment, and Plaintiff's activities. AR at 753. Plaintiff argues that Dr. Zeris's opinion contains internal inconsistencies, because Dr. Zeris documented his observation of Plaintiff's physical appearance, poor grooming, unusual eyewear, and elusive answers to questions. (Dkt. # 9 at 8.) But Dr. Zeris himself made those observations, and also concluded that Plaintiff had no psychiatric diagnoses. Counsel's argument notwithstanding, the observations themselves do not establish any particular diagnosis and thus are not inconsistent with Dr. Zeris's conclusions.

Plaintiff also reiterates the argument described above that he denied mental symptoms to Dr. Zeris out of fear of a schizophrenia diagnosis (dkt. # 9 at 8), but again, this explanation is not

based on the record. Plaintiff has failed to show that the ALJ erred in assessing Dr. Zeris's opinion.

*4. Miscellaneous Medical Evidence*

Plaintiff summarizes medical evidence at length, arguing that it "appears to confirm" that he has a somatoform disorder and that it corroborates his own testimony and Dr. Shkurkin's opinion. (Dkt. # 9 at 8-13.) Plaintiff does not point to any actual somatoform diagnosis in the record, however, and neither counsel nor the Court is qualified to render such a diagnosis. The Court also declines to reweigh the evidence in the manner requested by Plaintiff. This section of Plaintiff's brief does not establish error in the ALJ's decision.

*5. State Agency*

Plaintiff argues that the ALJ erred in crediting a September 2013 State agency opinion because it was rendered before "more recent evidence which confirmed that [Plaintiff] does indeed have severe mental impairments." (Dkt. # 9 at 13.) Plaintiff does not cite such evidence, and, as explained *supra*, the Court finds no error in the ALJ's step-two finding that Plaintiff did not have a medically determinable mental impairment during the adjudicated period. Thus, Plaintiff has failed to establish error in the ALJ's assessment of the State agency opinion.

*6. Later Opinions*

The ALJ noted that the record contained opinions and treatment notes post-dating the adjudicated period, in connection with Plaintiff's subsequent benefits application. AR at 754. The ALJ found no reason to reconsider the subsequent award of benefits, and found that the opinions and treatment notes did not pertain to the adjudicated period. *Id*.

Plaintiff acknowledges that the later opinions and treatment notes post-date the adjudicated period, but argues that because the opinions and notes are reasonably consistent with

Dr. Shkurkin's opinion, they "arguably relate back to the relevant time period." (Dkt. # 9 at 7-8.) This is not a persuasive argument: the opinions at issue are one-time examinations and contain no indication that the providers found that Plaintiff's symptoms persisted back into the adjudicated period, and the treatment notes pertain only to Plaintiff's current symptoms, which post-date the adjudicated period. AR at 1342-57, 1387-96, 1478-81, 1603-07, 1632-39. Plaintiff has not shown that the ALJ unreasonably found this evidence to be unrelated to the adjudicated period.

### 7. Loi Tran, M.A., MHP

Mr. Tran performed an intake evaluation of Plaintiff in September 2014, recording Plaintiff's symptoms and listing diagnoses. AR at 720-30. The ALJ did not discuss Mr. Tran's intake report in his decision.

The ALJ did not err in failing to discuss Mr. Tran's report, because the report does not contain any opinions regarding Plaintiff's RFC or his ability to perform work functions, and thus it is not significant, probative evidence relevant to the ALJ's inquiry. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ "not required to discuss evidence that is neither significant nor probative").

And, in the alternative, even if the ALJ should have discussed Mr. Tran's report, the report consists primarily of a record of Plaintiff's self-reporting, and the ALJ provided legally sufficient reasons to discount similar testimony, as discussed *supra*. Thus, any error would be harmless, given that the ALJ's decision adequately explains why Plaintiff's self-reporting is discounted.

### C. The ALJ Did Not Err in Discounting Plaintiff's Friend's Statement

Plaintiff's friend, Meg Kampen, wrote a statement in October 2014 regarding Plaintiff's symptoms and limitations. AR at 410-12. The ALJ summarized Ms. Kampen's statement and found that it was inconsistent with the medical evidence, which showed many unremarkable tests as well as stabilization of some symptoms with medication, as well as Plaintiff's denial of psychiatric symptoms. *Id*. at 754.

Plaintiff suggests that the ALJ erred by not considering Ms. Kampen's statement. (Dkt. # 9 at 17.) But on the contrary, the ALJ explicitly discussed and considered the weight to be assigned to Ms. Kampen's statement. AR at 754. Although Plaintiff goes on to argue that the ALJ failed to provide germane reasons to discount Ms. Kampen's statement, as required in the Ninth Circuit, this conclusory argument is not persuasive. As found by the ALJ, Ms. Kampen's description of Plaintiff's physical and mental symptoms is at odds with the objective medical record, and this is a germane reason to discount her statement. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

### V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 9th day of January, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 11